(Decided 7th May, 1869.)

## John T. B. Dorsey's Lessee *vs.* James S. Garey.

*Power of Courts to review Judgments and Decrees in a collateral proceeding— Validity of the title of a Purchaser under a Judgment or Decree passed by a Court of competent jurisdiction—Construction of the Code, Art.* 16, *sec.* 129—*The discretion conferred by said section, may be reviewed on appeal.*

Mere irregularity or error in the proceedings of a Court of competent jurisdiction, can never be discussed collaterally in another suit.

In all such cases, the only thing to be considered is whether the Court, whose proceedings are brought in question collaterally, had jurisdiction and power to pass the judgment decree, or order, under examination.

If an order be passed in the exercise of the lawful power and jurisdiction of the Court, any mere irregularity which may have occurred in passing it, or in the subsequent proceedings, will not invalidate the title of a purchaser under it.

Art. 16, sec. 129, of the Code, authorizing Courts of Equity, in their discretion, to order a sale of property before final decree, did not confer jurisdiction, but merely prescribed a summary remedy or mode of proceeding, in cases over which the Court had full jurisdiction, independent of the statute.

When a case comes within the provisions of said section, the power is conferred on the Court upon satisfactory proof as therein prescribed, to pass an order of sale at any time after the bill has been filed, without waiting for the appearance or answers of the defendants.

The discretion to be exercised by the Court in such case, is not a mere arbitrary discretion, but would be subject to review on appeal in the same case, and if improvidently exercised, the action of the Court would be set aside; but where it has been exercised in a case within the jurisdiction of the Court, and falling within the provisions of the Code, it cannot be examined collaterally, nor can its validity be questioned in any other cause before another tribunal.

APPEAL from the Circuit Court for Howard County.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

[Judges BRENT and GRASON, who sat at the hearing, were not present at the decision of this case.—*Reporter.*]

*Levin Gale* and *Thomas G. Pratt,* for the appellant:

The Bill in this case was not a proceeding strictly *in rem;* it did not describe any particular property; there was no levy, schedule, appraisement or return of it. It only attacked the land through the parties. *Hollingsworth vs. Barbour,* 4 *Peters,* 466; *Harris vs. Hardeman,* 14 *How.,* 343; *Clark & Jackson vs. Bryan & Lunt,* 16 *Md.,* 178; *Woodruff vs. Taylor,* 20 *Vermont,* 66, 72; *Denning vs. Corwin,* 2 *Wend.,* 648; *McKim vs. Mason,* 3 *Md. Ch. Dec.,* 212.

If the absent defendants had not been made parties by publication, no decree could have bound their interests. *Code of Pub. Gen. Laws, Art.* 16, secs. 88, 98.

Section 129, authorizing a sale before final decree, must be taken as to non-residents and infants, as being subject to and

qualified by those sections, otherwise you would have this anomalous condition : that if you advertise a non-resident to come in at a future day, thus putting him off his guard, you would have a right to sell at once ; whereas, if you had given him no notice, instead of a false one, he certainly would not be bound.

The proceeding under this section is not in pursuance of the general powers of the Chancery Court, but is a special and limited one, and must be strictly construed and strictly pursued. *Shivers vs. Wilson*, 5 *H. & J.*, 130 ; *Wickes vs. Caulk*, 5 *H. & J.*, 43 ; *Owings vs. Worthington*, 10 *G. & J.*, 292 ; *Thatcher vs. Powell*, 6 *Wheat*, 119 ; *McCabe vs. Ward*, 18 *Md.*, 505.

It is repugnant to every feeling of natural justice, that a man's property should be taken without either actual or constructive notice ; in this case the notice by publication was so far from being a notice that would enable the parties to guard and defend their rights and interests against these proceedings, that it lulled them into a false security, which was worse than no notice. *McKim vs. Mason*, 3 *Md. Ch. Dec.*, 211 ; *Regents of the University of Md. vs. Williams*, 9 *G. & J.*, 408 ; *Penobscot Railroad Company vs. Weeks*, 52 *Maine*, 456 ; *McCabe vs. Ward*, 18 *Md.*, 505 ; *Shriver's Lessee's vs. Lynn*, 2 *How.*, 59.

It cannot be supposed that the Legislature could have contemplated any such effect from this law, and, if it did so, it is so contrary to constitutional and legislative principles, that the Court should not hesitate to declare such a provision beyond the power of the Legislature. *Regents of the University of Md. vs. Williams*, 9 *G. & J.*, 408.

*James Mackubin, George W. Sands* and *Henry Stockbridge*, for the appellee :

If a Court of Equity was to be appealed to in this case, the Circuit Court of Howard county was the proper tribunal. In that county far the larger portion of the estate to be affected by the proceedings was located, and there was the residence

of all the parties whose interests were involved in the proceedings, and who resided in the State of Maryland. These parties were all duly summoned, appeared, and answered, and publication for the non-resident defendants was ordered, and duly made in accordance with the Acts of Assembly and the practice of the Courts of our State.

Nothing more was needed to give the Court complete control of all questions involved in the case. Here was a proper subject matter,—all persons interested made parties—all resident parties summoned—and all non-resident parties notified by publication.

The Court thus acquired, and had complete jurisdiction over the persons and the property designed to be affected by the suit. Any errors or irregularities which might occur, were proper subjects of appeal to the Court of Appeals, but were not subject to review in the same Court sitting as a Court of law.

Nor could the alleged error (if it were an error) of passing an order for the sale of the property before the expiration of the time limited for the appearance of the non-resident defendants, affect the question or deprive the Court of jurisdiction.

That order was no adjudication of the rights of the parties. It was but a recognition of the obligation imposed upon the trustees by the will, which created the fiduciary relation, and which was proven to the Court by the affidavits and exhibits which had been filed in the cause. It meant just what the order said and no more—that the "Court was satisfied clearly by the proof, that at the final hearing of the cause a sale of the real estate mentioned in the proceedings would be ordered," and it therefore promptly and wisely, for the benefit of all parties, passed the order of sale as authorized by the statute in such cases. *Code of Pub. Gen. Laws, Art.* 16, *sec.* 129.

The power conferred by the statute, and exercised by the Court in this case differs in no respect from that conferred and

exercised in other cases for the preservation of the property in controversy, and the protection of the rights and interests of the parties litigant. It is precisely analogous to that exercised in cases of injunctions and receivers. It is the same as that exercised in cases of attachment. *Code of Pub. Gen. Laws, Art.* 10, sec. 27 ; *O'Brien vs. Norris, et al.,* 16 *Md.,* 122.

The sufficiency of the proof which satisfied the Court, or the legal correctness of its action, it is not competent for the Court in the case now before it, to examine, because " the records or memorials of the judges of the Court of record, import in them such uncontrollable credit and veritie, as they admit no averment, plea or proof to the contrarie."—1 *Coke's Inst.,* 260 *a.*

The rule is well settled in Maryland in conformity with this authority of Lord Coke. *Calwell vs. Boyer,* 8 *G. & J.,* 148 ; *Fitzhugh, et al. vs. McPherson,* 9 *G. & J.,* 71 ; *Powles, et al. vs. Dilley, et al.,* 9 *Gill,* 241 ; *Ranoul vs. Griffie,* 3 *Md.,* 54 ; *Wilson, et al. vs. Ireland,* 4 *Md.,* 444 ; *Cook's Lessee vs. Carroll,* 6 *Md.,* 112 ; *Long vs. Long,* 9 *Md.,* 348.

If the equity proceedings operated any injustice to the appellant, his redress should have been sought in that Court sitting in Equity, and in the cause pending there, and not in the present action.

BARTOL, C. J., delivered the opinion of the Court.

The appellee, who was defendant below, claimed title to the land in controversy in this case, under the deed of the 18th day of November, 1864, from James Mackubin, trustee, who was appointed by the Circuit Court for Howard county, sitting in equity, by its order passed on the 6th day of January, 1864, in a cause wherein Mary A. T. Thompson, by her next friend, and others, were complainants, and John T. B. Dorsey, the appellant, and others, were defendants. That order empowered the trustee to sell the land mentioned in the proceedings, and the appellee, having purchased a part thereof, being the parcel of land now in controversy, and

having complied with the terms of sale prescribed by the order, and the same having been reported and ratified, the trustee executed and delivered to the appellee the deed under which he claims title.

At the trial, the appellant took two bills of exceptions, the first to the admission in evidence of the equity proceedings and the trustee's deed offered by the appellee; and the second, to the granting of the appellee's prayer, which virtually instructed the jury that the proceedings in the equity cause, if found by them, and the sale and conveyance by Mackubin, the trustee, to the appellee, were sufficient to defeat the appellant's action.

These exceptions present substantially the same question, that is, the legal force and effect of the action of the Circuit Court sitting in equity, and the proceedings thereunder to pass the title to the appellee.

In the examination of this question, we are not called on to consider whether the proceedings in the equity cause were in all respects regular, or in conformity with the rules of the Court, or the general rules regulating chancery proceedings. No principle is more firmly established, or more constantly asserted by Courts of justice, than that mere irregularity or error in the proceedings of a Court of competent jurisdiction can never be discussed collaterally in another suit. This principle has been recognized and asserted by this Court recently in the cases of *Cockey vs. Cole*, 28 *Md.*, 276, and *Schley's Lessee vs. M. & C. C. of Balto.*, 29 *Md.*, 34. In those cases, as in this, the question of the validity of certain orders and decrees of Courts of Chancery was brought before us collaterally for consideration, and the principles therein asserted as governing such cases, were stated with such distinctness, and are so applicable to the present case, that nothing more is necessary than to refer to them without again repeating the reasons or citing the authorities upon which they rest.

In all such cases the only thing to be considered is whether the Court whose proceedings are brought in question col-

laterally, had jurisdiction and power to pass the judgment, decree or order, under examination.

In this case the only inquiry we have to make is, as to the jurisdiction and power of the Circuit Court sitting in Equity, to pass the order of the 6th of January, 1864. If it was passed in the exercise of the lawful power and jurisdiction of the Court, any mere irregularity which may have occurred in passing it, or in the subsequent proceedings, would not invalidate the title of the purchaser.

The case presented by the bill was one clearly within the jurisdiction and cognizance of the Court. It was filed by *cestuis que trust,* and invoked the exercise of the powers of the Court over the trustee, and for the protection and security of the trust estate.

The whole subject matter of the bill and the relief prayed, were peculiarly within the jurisdiction of a Court of Equity.

The appellant and several other of the defendants were alleged to be non-residents of the State, and upon the filing of the bill, the usual order of publication against non-residents was passed, and publication made in conformity therewith, warning them to appear on or before the 1st day of March, 1864.

Before the expiration of the period thus limited for the appearance of the non-resident defendants, the order of the 6th of January, 1864, was passed; which recites that "the Court being satisfied clearly by the proof that at the final hearing of this case, a sale of the real estate mentioned in the proceedings will be ordered," then goes on to adjudge and order, that the same shall be sold, appoints James Mackubin, a trustee to sell, prescribes the terms of sale and the duties of the trustee, and requires the proceeds of sale to be brought into Court to be thereafter disposed of under its direction.

The provision of the Code under which this order was passed, is as follows:

Art. 16, sec. 129: "In all cases where a suit is instituted for the sale of real or personal property, or where from the

nature of the case, a sale is the proper mode of relief, the Court, in its discretion, may order a sale of the property before final decree, if satisfied clearly by proof that at the final hearing of the case, a sale will be ordered, and order the money arising from such sale to be deposited or invested, to be disposed of as the Court shall direct by final decree."

We entertain no doubt that the case presented by the bill, was one which came within the plain provisions of this section of the Code, and, therefore, it was within the discretion of the Court to order the sale before final decree.

It has been objected in the argument on the part of the appellant, that the order in question was not passed in pursuance of the general powers of the Chancery Court, but under a special and limited power, conferred by statute, which must be strictly construed and strictly pursued. If this were so, there would be no sufficient ground for impeaching the validity of the order, for it appears upon its face to have been passed in strict conformity with the Code, and within the limits of the discretion conferred on the Court.

But, on a careful consideration of the case, it seems to us not to fall within the rules governing the exercise of a special and limited jurisdiction conferred by statute.

The case before the Court was one within its general jurisdiction; the statute did not confer the jurisdiction, but merely prescribed a summary remedy, or mode of proceeding in cases over which the Court had full jurisdiction independent of the statute.

Whether the discretion, therefore, was judiciously exercised in the particular case, is a question we have no right to consider; nor are we at liberty in this case to review the Court's action, or to examine the proof upon which it was based.

For "where a Court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or not, its judgment, until reversed, is regarded as binding in every other Court." *Elliott vs. Piersol,* 1 *Pet.,* 340.

The principal ground upon which the validity of the order of the 6th of January, 1864, has been assailed, is that it was passed before the expiration of the time limited by the order of publication for the appellant and other non-resident defendants to appear in the cause; and it has been argued that the appellant, who was sued as a non-resident, not having had any actual notice of the suit by *subpœna*, or any constructive notice by publication for the period prescribed by law, before the order was passed, the Court had no jurisdiction over him, and therefore the order was passed without authority, and is null and void; and in support of this position, we have been referred to the cases of *Hollingsworth vs. Barbour*, 4 *Peters*, 466; *Harris vs. Hardeman*, 14 *Howard*, 334; *Woodruff vs. Taylor*, 20 *Vermont*, 66; *Penobscot Rail Road Co. vs. Weeks*, 52 *Maine*, 456; *McKim & Kennedy vs. Mason*, 3 *Md. Ch. Dec.*, 186, and to *Clark & Jackson vs. Bryan & Lunt*, 16 *Md.*, 171.

There is no doubt of the general proposition recognized by those cases, that "to give any binding effect to a judgment or decree determining the rights of a party, it is essential that the Court have jurisdiction both of the person and of the subject matter, and that to give a Court jurisdiction over a party it is essential that he should have notice of the proceedings either actual or constructive."

It has been justly said to be "a cardinal principle in the administration of justice, that no man can be condemned or divested of his right, until he has had an opportunity of being heard. He must either by serving process, publishing notice, appointing guardian, or in some other way be brought into Court; and if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the Court had undertaken to act where the subject matter was not within its cognizance." *Bloom vs. Burdick*, 1 *Hill*, 130.

Recognizing the binding force of this principle as founded on maxims of natural justice, we proceed to inquire whether the order of the 6th of January, now under consideration

comes within the application of the principle; or, in other words, whether it was such a judgment or decree as the Court, had no power or jurisdiction to pass without previous notice to the parties defendants. This depends upon the true construction of the provision of the Code before cited, and upon the real nature and effect of the order itself.

By the terms of the Code, the Court is authorized in its discretion, to order a sale before final decree, "*in all cases where a suit is instituted for the sale of real or personal property, or where, from the nature of the case, a sale is the proper mode of relief.*" And this discretion is to be exercised in such cases "when the Court is satisfied by proof that at the final hearing a sale will be ordered."

The plain intent and object of this provision is to empower the Court, in any case coming within its operation, to order a sale before the rights of the parties have been determined by final decree. The operation and effect of such an order is not to settle or adjudge the rights of the parties, but to convert the property into money, when the Court is satisfied that a sale will ultimately be decreed, and in its discretion it shall consider such a course necessary for the preservation of the property, and the protection of the rights and interests of the parties litigant.

Such an order is not in its nature a judgment or decree within the meaning of the principle before stated, and requiring for its validity previous notice to the parties interested. Unquestionably before passing such an order, it would, in most cases, be proper that previous notice should be given to the parties. And in a case where the question is presented by a direct proceeding, authorizing a review of the Court's action, the want of such notice might be considered sufficient ground for a reversal of the order. But, as the question is here presented, we are considering only the power and jurisdiction of the Court to pass the order, not whether the discretion of the Court, in passing it, may have been irregularly or improvidently exercised.

In considering this question, we have examined carefully the several provisions of the Code referred to by the appellant's counsel, in connection with the 129th section of the 16th Article, and have also considered that section in the light of the original Act of 1835, ch. 380, section 1, from which it was codified, and are of opinion that the case before the Chancery Court fell clearly within its purview and operation.

According to our construction of that section, when a case comes within its provisions, the power is conferred on the Court, upon satisfactory proof as therein prescribed, to pass an order of sale at any time after the bill has been filed, without waiting for the appearance or answers of the defendants.

Such is the plain import and meaning of the provision of the Code. The discretion to be exercised by the Court in such case, is not a mere arbitrary discretion, but would be subject to review on appeal in the same case, and if improvidently exercised, the action of the Court would be set aside; but where it has been exercised in a case within the jurisdiction of the Court, and falling within the provisions of the Code, it cannot be examined collaterally, nor can its validity be questioned in any other cause before another tribunal.

It follows, from what has been said, that there was no error in permitting the chancery proceedings, and the deed of the trustee, to be offered in evidence, or in granting the prayer of the appellee. In the course of the argument in this Court, it has been contended that the appellant, having been, as alleged, within the State of Virginia at the time the bill was filed, and having so continued during the late civil war, must be considered as an alien enemy, and that all legal remedies against him were suspended during the period of hostilities. This question is not presented by the record, not having been raised or decided in the Court below; and, therefore, under the Code, Article 5, section 12, we are precluded from expressing any opinion upon it.

*Judgment affirmed.*

(Decided 12th May, 1869.)